IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, ) ) ) ) Plaintiff, ) ) v. ) ) CRAIG MCCASLAND, ) ) Defendant. ) | Civil Action No. 1:24-cv-373 (RDA/LRV) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Massachusetts Mutual Life Insurance's ("MassMutual") Motion for Summary Judgment ("Motion"). Dkt. 43. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition.[1] Considering the Motion together with Plaintiff's Memorandum in Support (Dkt. 44) and Plaintiff's Reply (Dkt. 50), the Court GRANTS Plaintiff's Motion for the reasons that follow.

---

[1] Upon the Court's review of the materials related to summary judgment, the Court discovered that the *Roseboro* notice that this Court initially issued was sent to the incorrect address. Dkt. 49. Thus, unlike other cases where a *Roseboro* notice was returned as undeliverable, the cause for the undelivered notice here was the failure to include the updated address provided on November 15, 2024, Dkt. 38, in the Clerk's Office list of addresses on the docket. Accordingly, on August 14, 2025, the Court issued a new *Roseboro* notice directing *pro se* Defendant Craig McCasland to respond within 21 days which was sent to both addresses available to the Court—only one of which was, as expected, returned as undelivered. Despite the reissuance of the *Roseboro* notice to both of the addresses Defendant has been known to use, no response or opposition has been filed.

## I.   UNDISPUTED FACTS[2]

On December 20, 2019, MassMutual issued an Individual Single Premium Fixed Deferred Annuity, Contract No. 571021556 (the "Annuity"), to Miyoko McCasland ("Miyoko"). Dkt. 1 ¶ 6; Dkt. 1-2 (Exhibit A). At all relevant times, Defendant was listed as the primary beneficiary of the Annuity. Dkt. 1 at ¶ 7. When Miyoko died on August 20, 2022, the death benefit of the Annuity became due and payable to Defendant. *Id.* at ¶ 8. Defendant called MassMutual on October 5, 2022, in order to provide notification of Miyoko's death. Dkt. 44-3 ¶ 5 (Declaration of Susan Rogers). On October 6, 2022, and November 10, 2022, MassMutual sent a letter to Defendant, including an annuity claim packet and request for a copy of the death certificate. *Id.* at ¶¶ 6-7; Dkt. 44-4; Dkt. 44-5. Defendant completed and submitted the Annuity Claim Packet to MassMutual in November 2022 (the "Claim Form"). Dkt. 1 ¶ 9; Dkt. 1-3. On the Claim Form, Defendant asked for the death benefit to be deposited directly into his bank account with JP Morgan Chase (the "Account"). Dkt. 1-3 at 4.

On December 8, 2022, MassMutual made a payment to Defendant in the amount of $230,674.56, representing the death benefit amount owed to him under the Annuity. Dkt. 1 ¶ 11. This payment was made via direct deposit into Defendant's Account as he had requested. *Id.* at ¶ 11; Dkt. 1-4 (ACH Payment Confirmation). Account records for the month of December 2022 confirm that the payment was made and deposited into his account. *See* Dkt. 44-1 ¶ 8 (Declaration of Sandra K. Jones); Dkt. 44-2 at 7 (JPMorgan Chase Bank, N.A.'s Response to Subpoena *Duces*

---

[2] As discussed *supra*, Defendant has failed to oppose or otherwise respond to any of the factual assertions set forth in the Motion. This Court therefore considers the facts as alleged by MassMutual to be undisputed as a matter of law. Fed. R. Civ. P. 56(c); *McDonald v. Loudoun Bd. of Supervisors*, 2011 WL 3951621 (E.D. Va. Sept. 6, 2011) (holding a nonmoving party who fails to timely file an opposition to summary judgment "waives the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting materials accompanying it").

*Tecum*). On that same day, MassMutual sent Defendant a letter which detailed the explanation of benefits payable to him under the contract, including $230,674.56 in death proceeds and $134.56 in post-mortem interest, for a total of $230,809.12 in net death proceeds. Dkt. 44-3 ¶ 12; Dkt. 44-7 (Letter to Defendant).

Under the terms of the Annuity, the death benefit earns interest. Dkt. 44-3 at ¶ 10. It is MassMutual's practice to pay the death benefit first, and then the interest due second. *Id.* The interest due to Defendant on the death benefit payment was $134.56. *Id.* at ¶¶ 11-12; Dkt. 44-7. On December 9, 2022, MassMutual sent a second payment to Defendant, which was intended to be for only the interest due on the death benefit payment. Dkt. 44-3 at ¶ 13. Instead, a second payment for the full death benefit amount of $230,674.56 was made *via* direct deposit to Defendant's Account. Dkt. 1 ¶ 12; Dkt. 1-5 (Second ACH Payment Confirmation). Account records reflect that the second payment was made and deposited into Defendant's Account on December 12, 2022. Dkt. 44-1 ¶ 8; Dkt. 44-2 at 6 (JPMorgan Chase Bank, N.A.'s Response to Subpoena Duces Tecum). The second payment made to Defendant on December 9, 2022 was an error (the "Overpayment"). Dkt. 1 ¶ 13; Dkt. 44-3 ¶¶ 12-13.

Records from the Account show both deposits made by MassMutual were systematically withdrawn from that Account in less than eight (8) months, resulting in a zero ($0) Account balance by August 2023. Dkt. 44-1 ¶ 8; Dkt. 44-2.

On January 19, 2023, MassMutual identified the Overpayment. Dkt. 1 ¶ 14; Dkt. 44-3 ¶ 14. MassMutual attempted to recoup the second payment from the Account, but the request to recoup *via* EFT was ultimately unsuccessful due to insufficient funds. Dkt. 1 ¶ 15; Dkt. 44-3 ¶ 15; Dkt. 44-8 (se² Finance Fast Money Request); Dkt. 44-9 (NACHA Return File). By letter dated February 10, 2023, MassMutual notified Defendant that it could not recoup the Overpayment, and

3

that the Overpayment needed to be returned to MassMutual. Dkt. 1 ¶ 16; Dkt. 1-6 (First Overpayment Notice); Dkt. 44-3 ¶ 16. Defendant did not respond to MassMutual and he continued to spend the funds. Dkt. 1 ¶ 17; Dkt. 44-1 ¶ 8; Dkt. 44-2.

By letter dated March 16, 2023, MassMutual followed up with Defendant, again seeking the return of the Overpayment and advising him that he was not entitled to retain the funds. Dkt. 1 ¶ 18; Dkt. 1-7 (Second Overpayment Notice); Dkt. 44-3 ¶ 16. On March 20, 2023, MassMutual contacted Defendant *via* telephone. Dkt. 1 ¶ 19; Dkt. 44-3 ¶ 17; Dkt. 44-10 (Call Transcript). Defendant answered the call and stated that he had not received any of the overpayment letters, although he confirmed that MassMutual had his correct address. Dkt. 44-10 at 2 (Call Transcript). Defendant asked that MassMutual send him another letter before he would discuss the matter further. *Id.* MassMutual sent a third letter on March 20, 2023, to Defendant reiterating that he was not entitled to retain the Overpayment, and to return them to MassMutual. Dkt. 1 ¶ 20; Dkt. 1-8 (Third Overpayment Notice); Dkt. 44-3 ¶ 18. By letter dated May 5, 2023, MassMutual sent a fourth request to Defendant *via* certified mail. Dkt. 1 ¶ 21; Dkt. 1-9 (Fourth Overpayment Notice); Dkt. 44-3 ¶ 19. However, the May 5, 2023 letter was returned to MassMutual as "undeliverable" on June 10, 2023. Dkt. 44-3 ¶ 19. MassMutual received no further contact from Defendant prior to filing this lawsuit despite numerous attempts to contact him. Dkt. 1 ¶ 22; Dkt. 44-3 ¶ 20.

## II.   PROCEDURAL BACKGROUND

On March 7, 2024, Plaintiff filed the instant case, asserting claims against Defendant for unjust enrichment, conversion, and money had and received. Dkt. 1. Defendant retained counsel and filed an Answer and Counterclaim on April 26, 2024. Dkt. 10. In this filing, Defendant asserted that the form asking for direct deposit of the death benefit did not exhibit his handwriting

4

or actual signature and was thus fraudulently submitted. *Id.* ¶ 9. Defendant further asserted a Counterclaim against Plaintiff for an asserted failure to pay him the death benefit and demanded that Plaintiff pay Defendant. *Id.* ¶¶ 12, 13, 17. Defendant's counsel then issued a subpoena to Defendant's bank. Dkt. 44-1 ¶¶ 6-7. The subpoena response showed that Defendant had received two payments from Plaintiff for $230,674.56 in December 2022, and that the funds were spent or transferred out of the Account until the Account was emptied. *Id.* ¶ 8; Dkt. 44-2. After this response was received, Defendant reportedly ceased responding to his counsel and has failed to participate in this litigation. Dkt. 26. As a result, Defendant's counsel filed a motion to withdraw as counsel and a motion to voluntarily withdraw Defendant's counterclaim, and both were granted by this Court. Dkts. 25, 26, 28, 29, 34, 37. Defendant has failed to make further appearance in this matter or retain additional counsel.

### III. LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. "(A) party opposing summary judgment may not simply rest on the allegations of his complaint but must instead come forward with specific evidence showing the existence of a genuine issue of fact." *Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

## IV.   ANALYSIS

On March 7, 2024, Plaintiff filed the instant Complaint alleging (1) unjust enrichment, (2) conversion, and (3) money had and received. Dkt. 1. On December 13, 2024, Plaintiff moved for summary judgment on each of these claims. Dkt. 43. After Defendant was properly notified under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), he failed to file a response. *See* Dkt. 53. Upon consideration of Plaintiff's memorandum in support and reply in support, the Court finds that summary judgment should be awarded to Plaintiff on each of its claims for the reasons that follow.

### A.   Unjust Enrichment

To succeed on a claim for unjust enrichment, a plaintiff must show: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006). All of these elements are satisfied here.

*First*, the undisputed facts (even though elicited through Defendant's former counsel) show that Defendant received twice the amount to which he was entitled under the Annuity contract. Dkt. 44-1 ¶ 8 (Declaration of Sandy Jones); Dkt. 44-2 at 6 (JPMorgan Chase Bank, N.A.'s Response to Subpoena *Duces Tecum*). Thus, a benefit was conferred on Defendant by Plaintiff which he was not owed (the Overpayment), and the first element is satisfied.

*Second*, the undisputed facts show that Defendant had knowledge of the Overpayment. Plaintiff sent Defendant a letter explaining the amount to which he was entitled. Dkt. 44-3 ¶ 12 (Declaration of Susan Rogers); Dkt. 44-7 (Letter to Defendant). Defendant received duplicative

payments of this benefit. Dkt. 1-5 (Second ACH Payment Confirmation); Dkt. 44-1 ¶ 8; Dkt. 44-2 at 6. Plaintiff sent four letters to Defendant at an address that he contemporaneously confirmed was accurate. Dkt. 44-3 ¶¶ 16-19; Dkt. 1-6 (First Overpayment Notice); Dkt. 1-7 (Second Overpayment Notice); Dkt. 44-10 (Call Transcript); Dkt. 1-8 (Third Overpayment Notice); Dkt. 1-9 (Fourth Overpayment Notice). Plaintiff also notified Defendant of the Overpayment *via* telephone. Dkt. 44-10. Defendant depleted the entire account into which the Overpayment was deposited. Dkt. 44-1 ¶ 8; Dkt. 44-2. Plaintiff then filed the instant complaint and served Defendant, who retained counsel and answered. Dkts. 5, 10. Accordingly, the second element is satisfied.

*Third*, the undisputed facts show that Defendant retained the Overpayment in circumstances that render it inequitable for Defendant to retain the benefit without paying for its value. The undisputed record shows that Defendant was not entitled to the Overpayment but retained the Overpayment despite it being the result of an honest mistake by Plaintiff and Plaintiff's subsequent diligent efforts to recover the Overpayment. *See, e.g.*, Dkt. 44-3 ¶¶ 12-19; Dkt. 44-7; Dkt. 1-6; Dkt. 1-7; Dkt. 44-10; Dkt. 1-8; Dkt. 1-9. Accordingly, the last and final element of unjust enrichment is satisfied, and Plaintiff is entitled to summary judgment on this claim. *Cf. Metro. Life Ins. Co. v. Faircloth*, 2013 WL 12193433, at *1 (E.D.N.C. July 31, 2013) (holding life insurance company stated a claim for unjust enrichment under North Carolina law based on overpayment of benefits, subsequent notification in writing, and failure to reimburse, and ordering default judgment in amount of overpayment).

### B.   Conversion

To succeed on a claim for conversion, a plaintiff must show: "(i) the ownership or right to possession of the property at the time of the conversion, and (ii) the defendant's conversion by the

wrongful exercise of dominion or control over the plaintiff's property, depriving plaintiff of possession." *Federal Ins. Co. v. Susan M. Smith, et al.*, 144 F. Supp. 2d 507, 517-18 (E.D. Va. 2001). As explained *supra*, Defendant was not entitled to the Overpayment, and rather than promptly returning the funds upon demand, Defendant wrongfully kept and spent the Overpayment funds until his account was entirely depleted, preventing Plaintiff from recovering possession of the funds. Accordingly, the elements for conversion are satisfied, and Plaintiff is also entitled to summary judgment on this count. *Cf. Transamerica Life Ins. Co. v. Lawrence E. White & P'ship Mgmt. Servs. Grp., LLC*, 2024 WL 4905399, at *23 (M.D. Fla. Oct. 8, 2024) (holding under Florida law that a life insurance company was entitled to summary judgment on its claim for conversion where it had mistakenly disbursed an overpayment of funds, it demanded the return of the overpayment, and the defendant refused to return the overpayment); *see also id.* (collecting cases in which courts held that failure to return money after demand constituted conversion).

### C. Money Had and Received

To succeed on a claim for money had and received, a plaintiff must show that a defendant "has money of [the plaintiff] which he has no right to retain and which the defendant is obligated by natural justice and equity to refund." *Hartford Fire Ins. Co. v. First Union Nat'l Bank*, 45 Va. Cir. 279, 281 (Fairfax Cnty. Cir. Ct. 1998). Again, in this case, Defendant kept the mistakenly transferred Overpayment to which he was not entitled, and which he is obligated by natural justice and equity to refund. Accordingly, Plaintiff is also entitled to summary judgment on this count.

### IV. CONCLUSION

In sum, Plaintiff is entitled to summary judgment on each of its claims. Plaintiff cannot, however, recover the funds at issue more than once. Thus, Plaintiff's total damages for all three

counts are $230,540 (which is the $230,674.56 Overpayment less the interest Defendant was owed in the amount of $134.56) and pre- and post-judgment interest.

*  *  *

For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment (Dkt. 43) is GRANTED; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to enter Rule 58 judgment on behalf of Plaintiff and against Defendant on Counts I, II, and III of the Complaint (the claims of conversion, unjust enrichment, and money had and received) in the total amount of $230,540 plus pre- and post-judgment interest; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

IT IS SO ORDERED.

Alexandria, Virginia
November 13, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge